UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

TOBEY L. VUJNOVICH,              )
                                 )
        Plaintiff,               )
                                 )
        v.                       )      CASE NO. 2:10-CV-43 JD
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
        Defendant.               )

## Opinion and Order

On January 22, 2010, Plaintiff, Tobey Vujnovich ("Vujnovich"), filed her Complaint,

seeking review of the final decision of the Defendant, Commissioner of Social Security

("Commissioner"). [DE 1]. On May 7, 2010, Vujnovich filed her opening brief. [DE 15]. On

June 16, 2010, this case was reassigned to the undersigned for all purposes. On July 26, 2010,

the Commissioner filed a response brief. [DE 19]. On August 13, 2010, Vujnovich filed a reply

brief. [DE 20].

## I. Procedural History

On February 6, 2007, Vujnovich filed an application for Disability Insurance Benefits

("DIB") alleging that she became disabled on July, 7, 2001 due to symptoms associated with

osteoarthritis in her neck, knees, and hips; numbness in her arm and head; heart palpitations,

rapid pulse; difficulty breathing; and dizziness. (Tr. 128-30, 161). However, Vujnovich's

application was denied initially and upon reconsideration. (Tr. 84-87, 90-92). Thereafter,

Vujnovich requested a hearing before an administrative law judge ("ALJ"); and, on January 6,

2009, Vujnovich testified with counsel before an ALJ. (Tr. 21-81, 96-97). An impartial medical

expert ("ME") and an impartial vocational expert ("VE") were also present at the hearing.  (Tr. 21).

On March 31, 2009, the ALJ issued a decision that Vujnovich was not disabled under the Social Security Act, concluding that Vujnovich retained the residual function capacity to perform Vujnovich's past relevant work and other jobs that existed in significant numbers in the national economy.  (Tr. 10-20).

Specifically, the ALJ found that Vujnovich met the insured status requirements of the Social Security Act through December 31, 2006 ("date last insured").  (Tr. 12).  In addition, the ALJ found that Vujnovich had not engaged in substantial gainful activity ("SGA"), since the onset date of her alleged disability.  (Tr. 12).  The ALJ concluded that Vujnovich had the severe impairments of degenerative joint disease in both knees, degenerative disc disease in the cervical spine, and chronic pain in the knees, neck, hips, ankles, and left shoulder.  (Tr. 12).  Despite these severe impairments, however, the ALJ concluded that Vujnovich's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13).  Instead, the ALJ determined that Vujnovich had the RFC[1] to perform unskilled[2] light work[3] as defined in 20 C.F.R. § 404.1567(b) with the additional limitations that

---

[1] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting.  20 C.F.R. § 404.1545(a)(1).

[2] At a later point in the decision, however, the ALJ made a nearly identical RFC finding, with the sole exceptions being the absence of the ALJ's previously stated limitation to "unskilled" light work and an elaboration of light work to include, "lift 10 pounds frequently and 20 pounds occasionally, and sit and stand/walk at least 6 hours each.".  *See* Tr. 18. The Court addresses the consequences of this difference as part of its review of the ALJ's Step 4 and 5 conclusions.

[3] 20 C.F.R. § 404.1567(b) defines light work as follows,
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing

Vujnovich could only occasional climb stairs, ladders, ropes, and scaffolds; and could only occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 18). Given this RFC, the ALJ subsequently concluded that Vujnovich could perform her past jobs as cashier, gas station manager, and office administration manager, as well as a significant number of other jobs in the economy, and that Vujnovich was, therefore, not disabled. (Tr. 18-20).

On November 25, 2009, the Appeals Council denied Vujnovich's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). On January 22, 2010, Vujnovich filed her complaint in this Court, pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Social Security Administration. [DE 1].

## II. Facts

At the time of Vujnovich's date last insured, December 31, 2006, Vujnovich was fifty years old. (Tr. 128, 143). Vujnovich has completed three years of college; and, prior to the onset of her alleged disability, she had past relevant work as a cashier, gas station manager, and office administrative manger. (Tr. 18, 73, 168). Following her alleged onset date, Vujnovich temporarily worked at two jobs but stopped working at both places because of her medical condition and symptoms. (Tr. 146, 161). Nevertheless, Vujnovich has not performed substantial gainful activity since her alleged onset date of July 7, 2001. (Tr. 12). Vujnovich is insured for the purposes of the status requirements of the Social Security Act ("the Act") through December 31, 2006. (Tr. 12).

### A. Medical Evidence

---

a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Vujnovich has a history of surgeries to her right ankle, both knees, and her left wrist. (Tr. 243, 272, 347, 364). On July 3, 2001, she suffered an injury to her left knee while working. (Tr. 169, 256). July 7, 2001 is the alleged onset date of her disability. (Tr. 161). On July 13, 2001, Vujnovich had surgery on her left injured knee. (Tr. 268-70). Thereafter, on January 11, 2002, Vujnovich's surgeon, Dr. Luciano Raymundo, claimed that Vujnovich had reached maximum recovery and had experienced a forty-percent disability as a result of the injury. (Tr. 243-44). Nevertheless, Dr. Raymundo released Vujnovich to return to work with restrictions that stipulated no climbing, squatting and kneeling. (Tr. 14, 245).

In August 2004, Vujnovich began seeing her treating physician, Dr. Joseph Anthony DeJoan. (Tr. 300). Between 2004 and 2006, Dr. DeJoan diagnosed Vujnovich with dizziness, (Tr. 337); hypertension, (Tr. 322, 324, 326-27, 334, 336-37); obesity, (Tr. 337); and lower cervical spine spondylolysis, (Tr. 281). Additionally, in 2004 and 2005, Vujnovich was also diagnosed with bronchospasm and dizziness by doctors, during emergency room visits made on account of dizziness, blurred vision, and chest pain. (Tr. 208-238, 215, 226).

On March 28, 2007, three months after Vujnovich's date last insured, Vujnovich underwent a consultative examination with Dr. J. Smeikal on behalf of Disability Determination Services. (Tr. 347-52). Dr. Smeikal diagnosed Vujnovich with osteoarthiritis in her cervical spine, knee, ankles, and hips with restricted range of motion; acute sinusitis involving the left maxillary sinus; and hypertension not controlled by medication. (Tr. 351). Dr. Smeikal quantified the restricted range of motion in Vujnovich's hips, ankles, cervical region and right shoulder, noting reductions in each area. (Tr. 352). However, Dr. Smeikal found that Vujnovich's strength was 5/5 in all muscle groups and concluded that Vujnovich retained the full range of motion in the lumbar and thoracic region. (Tr. 349). Shortly thereafter, on April

19, 2007, Vujnovich underwent a cardiolite treadmill stress evaluation with normal and unremarkable results. (Tr. 379).

On April 23, 2007, Dr. Fernando R. Montoya completed a Physical Residual Functional Capacity Assessment on behalf of Disability Determination Services. (Tr. 353-60). Therein, Dr. Montoya found that Vujnovich can: occasionally lift twenty pounds, frequently lift ten pounds, stand and walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, and perform unlimited pushing and pulling. (Tr. 354). Additionally, Dr. Montoya opined that Vujnovich can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and can only occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 355). Further, Dr. Montoya found no limitation in Vujnovich's ability to reach. (Tr. 356).

On October 17, 2007, nearly ten months after her date last insured, Vujnovich was examined by Dr. Larry R. Brazley, a rheumatologist. (Tr. 364-65). Dr. Brazley diagnosed Vujnovich with probable stage four moderate to severe osteoarthritis of the right knee, cervical radiculitis with degenerative disk disease, and probable sciatica with radicular disease down both legs. (Tr. 365). He recommended additional x-rays, which were taken Novermber 26, 2007. (Tr. 375). After reviewing the x-rays, Dr. Brazley reported moderate to severe degenerative changes involving both medial and lateral compartments of the right knee and moderate to severe degenerative disk narrowing at L5. (Tr. 363). As a result, Dr. Brazley prescribed Vujnovich a home exercise program and suggested that she might benefit from a knee brace and lumbar corset. (Tr. 363).

On January 6, 2009, at Vujnovich's disability determination hearing before the ALJ, Dr. Hugh Savage appeared and testified regarding the record evidence. (Tr. 21). In particular, Dr. Savage opined that, based on the objective evidence and the physical findings of the consultative

examination, he believed that there was no reason why Vujnovich could not perform light work with the postural limitations stipulated by the Disability Determination Services. (Tr. 16, 40-43).

Following the hearing, and over a year after Vujnovich's date last insured, on January 12, 2009, Dr. DeJoan completed a medical statement regarding Vujnovich's limitations and retained functional abilities. Therein, Dr. DeJoan diagnosed Vujnovich with osteoarthritis, cervical spondylolysis and chronic pain; and he found inflammation in almost all of Vujnovich's joints. (Tr. 410). In addition, Dr. DeJoan indicated that, prior to Vujnovich's date last insured, Vujnovich had limitation of motion in her joints and was, therefore, unable to ambulate effectively or perform fine and gross movements effectively. (Tr. 410). Dr. DeJoan further quantified Vujnovich's limitations to include: fifteen minutes of standing, thirty minutes of sitting, two hours of work per day, only occasional bending, and never stooping or lifting her right arm over her shoulder. (Tr. 411).

## B. Vujnovich's Testimony

At the hearing before the ALJ, Vujnovich testified that she experiences pain in her neck, hips, knees and ankles, and rated the pain as an eight on a ten point scale. (Tr. 56). In addition, Vujnovich articulated that she has experienced numbness down both of her legs for several years. (Tr. 60).

Vujnovich asserted that her knees swell daily but noted that the swelling goes down if she raises her feet and legs up and puts ice on them. (Tr. 61). Vujnovich additionally testified that she sits in a recliner most of the day on account of the pain but has to get up and down due to pain in her hips. (Tr. 57-59). Vujnovich opined that she could stand approximately twenty-five minutes at a time and three hours in an eight-hour period. (Tr. 55-56). Further, Vujnovich testified that she is only able to walk about a block. (Tr. 58).

In addition to her knee and hip pain, Vujnovich asserted that it is hard for her to lift her right arm because of pain in her neck and arm. (Tr. 61). Vujnovich also indicated that she has problems turning her neck due to pain that radiates down her arm and back and explained that she is afraid to drive because she has difficulty looking both ways. (Tr. 59, 66). Further, Vujnovich testified that she experiences severe pain in her right wrist and forearm, making it difficult for her to write or hold a glass. (Tr. 43, 62-63).

Regarding her daily and weekly activities, Vujnovich testified that she spends most of the day reclining in a lounge chair or laying down due to pain and articulated that she does not go out much. (Tr. 58-59, 65). Vujnovich asserted that her aunt shops for her groceries, does her laundry, and helps Vujnovich clean her house. (Tr. 63-64, 66-67). Vujnovich testified that she takes pain medications two or three times per day but asserted that the medications do not provide much relief beyond "taking the edge off." (Tr. 57). Specifically, Vujnovich explained that she takes Mobic on a daily basis and additionally takes Tramado and Vicodin when she is experiencing extreme pain. (Tr. 68). In addition, Vujnovich asserted that she has to lay down after she takes the pain medication because the medication makes her tired and the pain prevents her from standing. (Tr. 57).

## C. Testimony of the Vocational Expert

Also at the hearing on January 6, 2009, the Vocational Expert ("VE") testified that Vujnovich had past relevant work as: a cashier, normally classified as a light, semi-skilled job but was actually performed at the heavy exertional level; a gas station manager, classified as a light, skilled job; and an office administrative manager, normally classified as sedentary and skilled but was actually performed at the light exertional level. (Tr. 73). The ALJ asked the VE to consider an individual who could perform light work, could not climb ladders, ropes,

scaffolds, or stairs, could not bend, stoop, or crawl, but could perform all other posturals occasionally. (Tr. 73). The VE testified that such an individual would be able to perform Vujnovich's past job as an administrative manager. (Tr. 73). In addition, the VE testified that this hypothetical person could also perform other jobs, such as office clerk (approximately 8,000 positions existing in the Chicago/Northwest Indiana area); information clerk (4,000 positions); and cashier (25,000 positions). (Tr. 74-75). If a "sit/stand option" were included in the individual's limitations, the VE stated she could still perform about forty percent of the general office clerk positions and fifty percent of the cashier positions. (Tr. 78).

### III. Standard of Review

The ruling made by the ALJ becomes the final decision of the Commissioner when the Appeals Council denies review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). Thereafter, in its review, the district court will affirm the Commissioner's finding of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Id*. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Further, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## IV. Analysis

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(I)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ

determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Vujnovich asserts a number of issues with the ALJ's opinion. First, Vujnovich claims that the ALJ erred at Step 3 by failing to consider a medical opinion regarding medical equivalence and by failing to consider the exacerbating effects of Vujnovich's diagnosed obesity and hypertension. Second, Vujnovich argues that the ALJ failed to consider her testimony and failed to adequately articulate her credibility finding. Third, Vujnovich asserts that the ALJ's RFC determination is inadequately articulated and insufficiently supported by record evidence because the ALJ did not provide a function by function assessment and because the ALJ failed to consider Vujnovich's testimony. Fourth, Vujnovich argues that the ALJ failed to include the RFC limitation to unskilled work when soliciting the opinion of the Vocational Expert at Steps 4 and 5 and that the ALJ misstated the testimony of the Vocational Expert in relation to the ALJ's Step 4 finding.

## A. The ALJ's finding regarding functional equivalency with a listed impairment was not substantially supported.

Vujnovich asserts that the ALJ erred in deciding that her impairments failed to meet or equal a listed impairment. In particular, Vujnovich contends that the ALJ erred by not relying on a medical expert when assessing equivalence with a Listing and by failing to additionally consider the limiting effects of Vujnovich's documented obesity and hypertension. Both of Vujnovich arguments are persuasive.

Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment in the Listing of Impairments, found in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. § 404.1520(d). Accordingly, at Step 3, the ALJ must determine whether the claimant meets or equals any of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments ("the Listings") describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(a), 416.925(a). For each listed impairment, there are objective medical findings and other findings that must be met to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(3), 416.925(c)(2)-(3). Thus, when a claimant satisfies the criteria to meet a listed impairment, that person is deemed disabled and is automatically entitled to benefits, regardless of his or her age, education, or work experience. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(a), 416.925(a); 404.1525(c)(3), 416.925(c)(3). Alternatively, a claimant may also demonstrate presumptive disability by showing that his impairment is accompanied by symptoms that are equivalent in severity to those described in a specific Listing. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5); 404.1526; 416.926.

To begin, Vujnovich contends that, when considering medical equivalency with a listed

impairment in her case, the ALJ failed to consult the opinion of a medical expert and, thereby, erred in finding that Vujnovich**'s** impairments did not equal a Listing. Specifically, Vujnovich asserts that the ALJ mistakenly relied upon the testimony of medical expert, Dr. Savage, who did not opine regarding medical equivalency at Step 3.

The Seventh Circuit has made clear that an ALJ must consider an expert's opinion when determining whether a claimant's impairment equals a Listing. *Barnett*, 381 F.3d at 670-71. *See also* 20 C.F.R. § 404.1526(c) (when considering equivalency with a Listing, the Commissioner "also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner"); S.S.R. 96-6p ("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight.").

Here, the ALJ offered the following justification for her finding of medical equivalency.

> According to well-supported Medical Expert testimony [Dr. Savage] with which I agree, the medical evidence does not document listing-level severity of any impairment, and no acceptable medical source has mentioned finding is equivalent in severity to the criteria of any listed impairment, individually or in combination.

Tr. 13.

The Commissioner concedes that Dr. Savage did not discuss medical equivalency and that the ALJ's reliance on Dr. Savage's testimony at Step 3 was, indeed, misplaced . *See* DE 19 at 9 n.3. Nevertheless, the Commissioner argues that the ALJ additionally and properly relied upon the opinions of two state agency physicians in determining medical equivalency at Step 3. However, this argument is unavailing for two reasons.

First, it is not clear from the ALJ's opinion that the ALJ did, indeed, rely upon the

opinions cited by the Commissioner.[4]  Second, the additional opinions cited by the

Commissioner do not address the issue of medical equivalency at Step 3.  Rather, the opinions

cited discuss the severity of Vujnovich's impairments in terms of residual functioning capacity

("RFC").  In particular, the Commissioner cites a Physical RFC form, originally completed by

state agency physician Dr. Montoya and later affirmed by state agency physician Dr. J. Sands.

*See* Tr. 353-61.  Vujnovich correctly notes, however, that an opinion regarding medical

equivalency is not found anywhere on this form.  *See* Tr. 353-61.  As such, even if the ALJ could

have been said to have relied upon this form, as the Commissioner suggests, the opinions

contained therein are insufficient to support the ALJ's decision regarding equivalency at Step 3.

*Barnett*, 381 F.3d at 670-71 (holding that, because it involves a medical determination, an ALJ is

required to consider an expert's opinion when determining whether a claimant's impairment

equals a Listing); 20 C.F.R. § 404.1526(c); S.S.R. 96-6p.

 In addition, Vujnovich argues that the ALJ inadequately considered the limiting effects

of her obesity and hypertension when considering equivalency with a listed impairment.

Although the Court does not consider the ALJ's failure to discuss Vujnovich's obesity to be

reversible error, the ALJ is instructed to discuss the potentially exacerbating effects of

Vujnovich's obesity and hypertension on remand.

 In general, an ALJ should consider the effects of obesity together with the underlying

---

[4]Because the ALJ did not explain such reliance upon the medical opinions of the state agency physicians when she made her conclusion regarding medical equivalence, the Commissioner's arguments are improper *post hoc* rationalizations which can not be considered by the Court.  *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)); *Hendricks v. Astrue*, 2009 WL 648610 at *8 (S.D. Ind. 2009); *Menedez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).  Instead, "principles of administrative law require the ALJ to rationally articulate the grounds for her decision;" and the Court, therefore, "confines its review to the reasons supplied by the ALJ." *Steele*, 290 F.3d at 941; *Hendricks*, 2009 WL 648610 at *8.  *See also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

impairments, even if, as in the immediate case, the individual does not claim obesity as an impairment. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); *Clifford v. Apfel,* 227 F.3d 868, 873 (7th Cir. 2000); *Hilmes v. Barnhart*, 118 Fed.Appx. 56, 59 (7th Cir. 2004); SSR 02-1p. However, an ALJ does not commit reversible error, if the ALJ fails to explicitly discuss the exacerbating conditions of a claimant's obesity but, instead, relies upon the proffered functional limitations of medical practitioners familiar with the claimant's weight condition. *Prochaska*, 454 F.3d at 736-37; *Skarkbeck v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004); *Foster v. Barnhart*, 2006 WL 3206273 *9 (S.D.Ind. 2006). Further, where the record is silent regarding how a claimant's obesity exacerbates her underlying conditions and the claimant does not present evidence regarding the limiting effects of obesity at the hearing, an ALJ's failure to specifically discuss a claimant's obesity does not amount to reversible error. *See e.g. Skarkbeck*, 390 F.3d at 504-05 (finding no error at Step 3, where the ALJ relied upon the medical opinions of practitioners familiar with the claimant's weight condition and the claimant did not explain the limiting effects of her obesity); *Hernandez v. Astrue*, 277 Fed. Appx. 617, 624 (7th Cir. 2008) (unpublished opinion) (same); *Munoz v. Barnhart*, 47 Fed.Appx. 770, 774-75 (7th Cir. 2002) (unpublished opinion) (same); *Foster*, 2006 WL 3206273 at *9 (same). *See also Hilmes v. Barnhart*, 118 Fed.Appx. 56, 59 (7th Cir. 2004) (unpublished opinion) (finding no error at Step 3, where the claimant did not present record evidence of testimony explaining the limiting effects of her obesity).

Here, Vujnovich did not claim obesity as an impairment in her Disability Report. *See* Tr. 160-170. In addition, Vujnovich only identifies a single medical note indicating a diagnosis of "obesity," in a medical record that is over 400 pages in length. *See* Tr. 337. Further, Vujnovich fails to explain how her weight condition exacerbated her underlying impairments either through

additional record evidence or testimony regarding the same. *See generally* Tr. 23-72. Consequently, given such minimal reference to Vujnovich's weight condition and absolutely no explanation of its purported exacerbating effects, the Court does not find that the ALJ erred in failing to explicitly discuss the same as part of her Step 3 determination. *Hilmes*, 118 Fed.Appx. at 59; *Skarkbeck*, 390 F.3d at 504-05; *Foster*, 2006 WL 3206273 at *9. *See also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (noting that it is the claimant's burden to show that her impairments satisfy all the criteria specified in a Listing); *Knox v. Astrue*, 327 Fed.Appx. 652, 655 (7th Cir. 2009) (unpublished opinion) (same).

Nevertheless, as previously indicated, while the Court does not consider this issue to independently require remand, because remand has been determined appropriate to allow the ALJ an opportunity to reassess her Step 3 determination after first consulting with a medical opinion, the ALJ is instructed to also consider and discuss any potential exacerbating effects of Vujnovich's obesity on remand as well. *See* SSR 02-1p at *5 (noting the potential exacerbating effects of obesity in relation to two of the listed impairments identified by the ALJ in Vujnovich's case, specifically Listings 1.02 and 4.00).

In contrast to Vujnovich's limited record notations regarding obesity, however, the record is replete with references to Vujnovich's treatment for diagnosed hypertension, a condition also undiscussed by the ALJ at Step 3. *See e.g.* Tr. 322, 324, 326-27, 334, 336–37, 351. Additionally, although similarly not claimed as an impairment on Vujnovich's Disability Report, Vunjovich's treatment for hypertension and other cardiac-related conditions are clearly noted within the Report. *See* Tr. 161, 164, 166, 168-170. As with obesity, hypertension is not provided its own Listing but is considered in conjunction with other impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.00, Subsection H.1 ("Because hypertension (high

blood pressure) generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when we consider its effects under the listings."). *See also* 20 C.F.R. § 404.1526(c) (when considering medical equivalence, the Commissioner "considers all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding.").

Here, the ALJ specifically cited the listed impairments of the cardiovascular system as part of her Step 3 consideration. *See* Tr. 13. However, the ALJ made no mention of the evidence of Vujnovich's hypertension. *Id.* Consequently, on remand, the ALJ must consider and discuss the potential exacerbating effects of Vujnovich's diagnosed hypertension in relation to her Step 3 finding, consistent with 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.00, Subsection H.1.

In sum, on remand, the ALJ must consult a medical opinion regarding medical equivalency at Step 3. In addition, the ALJ must also consider and discuss any exacerbating effects that Vujnovich's diagnosed obesity and hypertension may have in relation to medical equivalency.

**B. The ALJ failed to sufficiently explain her reasons for considering Vujnovich's statements, concerning the intensity, persistence and limiting effects of her severe impairments, to be less than credible.**

Next, Vujnovich challenges the ALJ's finding that Vujnovich's statements concerning the intensity, persistence and limiting effects of her impairments were not fully credible. Given the ALJ's perfunctory credibility determination and complete lack of discussion in relation to Vujnovich's testimony, remand is additionally appropriate for the ALJ to reevaluate the same.

Because the ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal so long as it finds some support in the record and is not

patently wrong. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995). Indeed, "[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). However, as a bottom line, SSR 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support her credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). Further, while an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. *Id.*; SSR 96-7p.

The process for evaluating a claimant's symptoms is organized around two major steps. First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms. 20 C.F.R. § 416.929(a)-(b). In Vujnovich's case, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause Vujnovich's alleged symptoms. *See* Tr. 14. Second, after the first step is satisfied by the claimant, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." 20 C.F.R. § 416.929(a). While an ALJ may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the ALJ may consider that as probative of the claimant's credibility. *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir.2000); SSR 96-7p. Further, the regulations identify seven examples of the kinds of evidence the ALJ considers, in addition to objective medical evidence, when assessing the credibility of an individual's statements:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 416.929(c); SSR 96-7p.  The ALJ need not mechanically recite findings on each factor but must give specific reasons for the weight given to the individual's statements.  *Ware v. Apfel*, 2000 WL 1707942 (S.D. Ind. 2000); SSR 96-7p.

Vujnovich alleges that the ALJ's credibility determination was insufficiently articulated. Given the ALJ's complete lack of any discussion regarding Vujnovich's testimony and the ALJ's perfunctory credibility determination, Vujnovich's argument, in this regard, is also persuasive.

The ALJ's credibility determination consists entirely of one sentence of boiler-plate analysis.  Specifically, the ALJ concluded as follows,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the assessed residual functional capacity assessment.

(Tr. 14).  This language can be found in nearly every ALJ opinion, though it is almost always accompanied by further explanation of the *reasons* for such a finding. *See Parker v. Astrue,* 597 F.3d 920, 921-22 (7th Cir. 2010) (considering nearly identical language "meaningless boilerplate," which, by itself, provides no indication of the weight given to a claimant's testimony).  Some examples of such reasons include: inconsistencies in the claimant's testimony,

inconsistencies between the claimant's testimony and the medical evidence, inconsistencies between the claimant's testimony and the claimant's daily activities, and the claimant's failure to follow treatment as prescribed. *See e.g.* 20 C.F.R. 416.929(c)(4). Here, however, the ALJ offered no explanation *why* she considered Vujnovich's testimony to be less than credible. Indeed, at no point in the ALJ's opinion, did the ALJ even mention or discuss Vujnovich's testimony at all, leaving the detrimental, and incorrect, impression that Vujnovich did not offer any testimony regarding the limiting effects of her impairments.

Instead, Vujnovich offered significant testimony at the hearing before the ALJ. Indeed, Vujnovich's testimony makes up no less than forty pages of the record evidence. *See generally* Tr. 31-72. Therein, Vujnovich testified that she experiences pain in her neck, hips, knees and ankles, rating the pain as an eight on a ten point scale. *See* Tr. 56. In addition, Vujnovich testified that she sits in a recliner most of the day on account of the pain but has to get up and down due to pain in her hips. *See* Tr. 57-59. Quantifying her functional limitations on account of her leg and hip pain, Vujnovich opined that she could stand approximately twenty-five minutes at a time and three hours in an eight-hour period and could only walk a block. *See* Tr. 55-56, 58. Further, Vujnovich asserted that it is hard for her to lift her right arm or turn her neck because of pain. *See* Tr. 59, 61, 66. Vujnovich also testified that she experiences severe pain in her right wrist and forearm, making it is difficult for her to write or hold a glass. *See* Tr. 43, 62-63.

On account of the pain, Vujnovich testified that she spends most of the day reclining in a lounge chair or laying down and that she needs help with grocery shopping, doing laundry, and housework. *See* Tr. 58-59, 63-67. In addition, Vujnovich explained that she takes pain medications two or three times per day but asserted that the medications do not provide full

relief.  *See* Tr. 57, 68.  However, Vujnovich asserted that she has to lay down after she takes the pain medication because it makes her tired and the pain prevents her from standing.  *See* Tr. 57.

Nevertheless, despite this substantial testimony, the ALJ did not consider or discuss any of it in her opinion.  As such, it appears that the ALJ impermissibly ignored an entire line of record evidence.  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("[a]n ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required.").  *See also* SSR 96-7p (requiring an ALJ to consider a claimant's "statements about symptoms with the rest of the relevant evidence in the case record.").  Consequently, the Court can not affirm either the ALJ's credibility or resulting residual functioning capacity determinations as substantially supported by the record evidence.  *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (noting that an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues).

In particular, and critical to the ALJ's subsequent finding regarding Vujnovich's residual functioning capacity, Vujnovich correctly notes that the ALJ failed to articulate the weight given to Vujnovich's testimony regarding: the side effects of her medications, the severity of her pain, the difficulties utilizing her right arm, and the alleged limiting effects of her impairments, expressly articulated in functional terms by Vujnovich and indirectly confirmed through Vujnovich's circumscribed activities of daily living.  *See* 20 C.F.R. 416.929(c) (setting forth factors for the ALJ's credibility determination, which includes consideration of each of these specific types of evidence); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2001).  *See also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) ("where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations").

The law in this regard is clear. An ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); *Brindisi ex. rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003); SSR 96-7p ("The reasons for the credibility finding . . . must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"); *Banks v. Barnhart*, 63 Fed. Appx. 929, 933 (7th Cir. 2003) (unpublished opinion) ("[N]othing in Social Security Ruling 96-7p suggests that the reasons for a credibility finding may be implied."). Instead, an ALJ is required to articulate specific reasons to support his credibility finding, such that the claimant and subsequent reviewers can determine the weight afforded to the claimant's testimony. *Id.* Because the ALJ failed to do so in the immediate case, remand on the issue of Vujnovich's credibility is also appropriate.

**C. The ALJ erred when determining Vujnovich's residual functioning capacity by failing to discuss Vujnovich's testimony regarding the side effects of her medications, the severity of her pain, the difficulties utilizing her right arm, and the alleged limiting effects of her impairments.**

Vujnovich additionally argues that the ALJ failed to properly assess her residual functioning capacity ("RFC"). In particular, Vujnovich argues that the ALJ was not permitted to explain her RFC as a limitation to light work and, instead, should have articulated her RFC in a function-by-function analysis. Further, Vujnovich argues that the ALJ inadequately considered Vujnovich's testimony regarding the side effects of her medications, the severity of her pain, the difficulties utilizing her right arm, and the alleged limiting effects of her impairments. Vujnovich's first argument is not persuasive. However, having already concluded that the ALJ

failed to adequately consider and discuss Vujnovich's testimony, Vujnovich's second argument is persuasive.

The ALJ must determine the claimant's residual functional capacity before performing Steps 4 or 5. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. Residual functional capacity is an assessment of the work-related activities a claimant is able to perform on a regular and continued basis despite the limitations imposed by an impairment or combination of impairments. *Id.* This finding must be assessed based on all the relevant evidence in the record, 20 C.F.R. § 404.1545(a)(1), must consider all medically determinable impairments even if not considered "severe," 20 C.F.R. § 404.1545(a)(2), and must be supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

The ALJ has final responsibility for deciding a claimant's residual functional capacity, which is a legal decision rather than a medical one. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(e). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Haynes*, 416 F.3d at 626; *Golembiewski*, 322 F.3d at 917; *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Instead, an

ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

The ALJ found that Vujnovich had the RFC[5] to perform unskilled light as defined in 20 C.F.R. § 404.1567(b) with the additional limitations that she can only occasionally climb stairs, ladders, ropes, and scaffolds, and can only occasionally balance, stoop, kneel, crouch and crawl. *See* Tr. 13.

Vujnovich argues that the ALJ failed to follow procedures outlined in SSR 96-8p that, she contends, require a function-by-function assessment of a disability claimant's exertional capacity involving seven strength demands before determining which exertional level applies to a claimant. In particular, Vujnovich asserts that the ALJ should have considered and discussed, in specific terms, Vujnovich's retained ability to reach despite her testimony of severe pain in right arm and neck.

However, contrary to Vujnovich's assertion, the ALJ was not required to perform a function-by-function assessment. *Knox v. Astrue*, 327 Fed.Appx. 652, 657 (7th Cir. 2009) (unpublished opinion) ("the expression of a claimant's RFC need not be articulated function-by-function[,] a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"); *McMurty v. Astrue*, 2010 WL 4363404 *15 (E.D.Wis. 2010); *Bonilla-Castro v. Astrue*, 2008 WL 4186691 *9 (E.D.Wis. 2008)("SSR 96-8p does not require a function-by-function articulation requirement. The plain language of SR 96-8p requires the adjudicator to 'consider, not articulate' [a claimant's] residual functional capacity in a function-by-function

---

[5] Later in the opinion, however, the ALJ noted a nearly identical RFC finding, absent a limitation to unskilled work. *See* Tr. 18.

basis"); *Lawson v. Apfel*, 2000 WL 683256 **3-4 (S.D.Ind. 2000); *Morphew v. Apfel*, 2000 WL 682661 **3-4 (S.D.Ind. 2000). Rather, the ALJ must explain how the evidence supports her conclusions about Vujnovich's limitations and must discuss Vujnovich's ability to perform sustained work activities. *Lawson*, 2000 WL 683256 at **3-4; *Morphew*, 2000 WL 682661 at **3-4.

The ALJ did so here, devoting nearly five full pages to her evaluation of the record evidence as part of her residual functional capacity determination. Therein, the ALJ considered and discussed the treatment notes and medical opinions of five of Vujnovich's treating, consultative and reviewing doctors, and the medical opinion of an additional testifying medical expert who was familiar with Vujnovich's record and hearing testimony. Ultimately, from this evidentiary review, the ALJ opined that Vujnovich retained the ability to do unskilled light work, which, by statutory definition involves the ability to lift 20 pounds occasionally and 10 pounds frequently and a "good deal of walking or standing" or sitting with "some pushing and pulling of arm and leg controls." *See* Tr. 13, 18. *See also* 20 C.F.R. § 404.1567(b). In addition, the ALJ opined that Vujnovich had the additional limitations of only occasional climbing, balancing, stooping, kneeling, crouching, or crawling. *See* Tr. 13, 18.

Nevertheless, while the Court considers that ALJ's discussion regarding Vujnovich's RFC to be robust, the Court notes, again, that the ALJ failed to consider and discuss Vujnovich's testimony at any point in her opinion. In her testimony, Vujnovich articulates significant limitations in relation to pain in her arm, neck, hip, knees, and ankles, which, if believed, could have evidenced greater functional limitations than those opined by the ALJ. As such, because the Court can not determine whether the ALJ properly considered Vujnovich's testimony as part of her RFC determination, the Court can not determine whether the ALJ's opinion is

substantially supported by the record evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (noting that the Commissioner's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues). Consequently, remand of the ALJ's RFC determination is also warranted.

## D. The ALJ erred when making her Step Four and Five determinations by failing to clarify whether her RFC determination included a limitation to unskilled work.

Vujnovich also contends that the ALJ erred at Step 4 by misstating the Vocational Expert's testimony regarding Vujnovich's ability to perform her past work. In addition, Vujnovich asserts that the ALJ erred at both Steps 4 and 5 by failing to include the ALJ's stated limitation to unskilled work in her hypotheticals to the Vocational Expert.

The analysis at Step 4 focuses on whether the claimant can still do his past relevant work, in relation to the claimant's RFC determination. 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f), 416.920(a)(4)(iv) and (f). If the claimant can still do his past relevant work, the claimant will be found not disabled.

If the claimant cannot perform her past relevant work, the analysis at Step 5 focuses on whether the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g). At Step 5, the ALJ considers numerous factors, such as: the claimant's residual functional capacity ("RFC"), age, education, and work experience, to see if the claimant can make an adjustment to other work. *Id.* If a claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. *Id.* However, if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.*

At both Steps, the ALJ often utilizes the testimony of a Vocational Expert ("VE"), proffering hypothetical questions consistent with the ALJ's RFC findings. To the extent the ALJ

relies on the testimony from a VE, the hypothetical question posed to the expert must incorporate all relevant limitations from which the claimant suffers in order to accurately gauge how many jobs are available to the claimant in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). In addition, when posing hypotheticals to a VE, the regulations require that the ALJ consider the combined effects of a claimant's impairments. 20 C.F.R. § 404.1523.

Further, when a VE provides testimony about the requirements of a specific occupation, the ALJ has an affirmative duty to ask whether the testimony conflicts with the Dictionary of Occupational Titles ("DOT"). *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006); *Hofer v. Astrue*, 588 F.Supp.2d 952, 965-66 (W.D.Wis. 2008). When there is an apparent conflict between the VE's testimony and the information provided in the DOT, the ALJ has an affirmative responsibility to obtain a reasonable explanation for the apparent conflict. *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008); *Hofer*, 588 F.Supp.2d at 966; SSR 00-4p. However, where claimant's counsel did not identify a conflict at the hearing, the claimant must show that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. *Overman*, 546 F.3d at 462-63; *Hofer*, 588 F.Supp.2d at 966-67.

In regards to Vujnovich's first argument, the Commissioner concedes that the ALJ misstated the VE's testimony in relation to the past work that Vujnovich can still perform. In particular, in relation to her Step 4 finding, the ALJ stated,

> The Vocational Expert testified that with the assessed residual functional capacity, the claimant can perform the requirements of the office administrative manager as she actually performed it, *and can perform the requirements of the other jobs as they are typically performed*, even if not as she actually performed them.

Tr. 18 (emphasis added).  However, Vujnovich points out, and the Commissioner concedes, that the VE did not say that Vujnovich could do all of her past work but, rather, testified that Vujnovich had the retained ability to perform only the office administrative manager position. *See* Tr. 73. Nevertheless, the Court considers this mistake to be harmless error.  In particular, the Court notes that Vujnovich does not contest that the ALJ correctly cited the VE's conclusion, in so much as the VE actually determined that Vujnovich retained the RFC to perform one of her previous jobs.  *Scott v. Astrue*, 730 F.Supp.2d 918, 935 (C.D.Ill. 2010) ("Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits."); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision"). *See also Salt River Project Agric. Improvement and Power Dist. v. U.S.*, explaining harmless error, in relation to appeals from administrative agency determinations, as follows,

> When an agency relies on a number of findings, one or more of which are erroneous, we must reverse and remand only when there is a significant chance that but for the errors the agency might have reached a different result.  When it is clear that based on the valid findings the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming.

*Salt River Project Agric. Improvement and Power Dist. v. U.S.*, 762 F.2d 1053, 1060 n. 8 (D.C. Cir. 1985).

That said, Vujnovich's second argument, that the ALJ failed to include a limitation to unskilled work in her hypotheticals at both Steps 4 and 5, is persuasive and requires remand as to both Steps.  Specifically, Vujnovich correctly notes that the ALJ stated two RFC findings in her opinion, one including a limitation to unskilled light work and one including a limitation only to light work.  *Compare* Tr. 13 and Tr. 18.  Although the Commissioner asserts that this amounts to nothing more than scrivener's error, the Court can not be certain which of the ALJ's two RFC

findings is the correctly asserted one and should not be left to speculate whether the ALJ intended to include a limitation to unskilled work in her RFC finding. Further, Vujnovich is correct that, if stated incorrectly in the hypotheticals, the ALJ's use of the latter RFC could affect the outcome of the VE's analysis at Steps 4 and 5, as each of the jobs mentioned require the ability to do skilled or semi-skilled work. As such, remand is necessary for the ALJ to clarify which RFC finding is correct and to ensure that commiserate hypotheticals are articulated to the VE at Steps 4 and 5 of the analysis.

Further, in light of this Court's prior conclusions, remand in relation to these Steps is also warranted to allow the ALJ an opportunity to articulate new hypotheticals, after first reevaluating Vujnovich's credibility and residual functioning capacity. Hypothetical questions posed to a vocational expert must include all limitations supported by medical evidence in the record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). As previously discussed, the Court notes that, on remand, the ALJ will need to redetermine her RFC finding after first considering and discussing what weight to afford Vujnovich's testimony. Thereafter, because hypotheticals to the VE find their genesis in an ALJ's RFC determination and typically adhere closely to the same, the ALJ will also need to present new hypotheticals, consistent with the ALJ's re-evaluated RFC determination. *See Packham v. Astrue*, 2011 WL 13531 at *10 (N.D.Ill. 2011) (holding valid a hypothetical based upon a valid RFC determination). *See also Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) (noting that an ALJ may properly rely upon a VE's testimony, so long as the ALJ submits a hypothetical that reflects the ALJ's conclusions regarding the extent of the claimant's impairments); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (noting that an ALJ is "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible").

## V. Conclusion

For the aforementioned reasons, Vujnovich's motion to remand the ALJ's decision is

**GRANTED**.  [DE 1].  Accordingly, this case is **REMANDED** for further consideration by the

ALJ, consistent with the conclusions in this order.

SO ORDERED.

ENTERED: March 28,2011


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court